**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Robert B. Weltman,** | ) | **CASE NO. 1: 11CV 1229** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Leon Panetta, Secretary, *et al*.,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |


This is a lawsuit alleging age and religious discrimination.  Plaintiff Robert Weltman

alleges that Defendants, Leon Panetta, Secretary, and the United States Department of

Defense, Defense Finance and Accounting Service ("DFAS") terminated him from his

employment because of his age (67) (Count I) and religion (Jewish) (Count II) and in

retaliation for protected activity (Count III).  Defendants move for summary judgment on all

of plaintiff's claims.  (Doc. 19.)  For the reasons stated below, defendants' motion is granted.

**Facts**

Plaintiff was hired by DFAS effective April 14, 2008, as an Accountant, GS-510-11 in

DFAS's Departmental Reporting Division in Cleveland, Ohio.  He was sixty-two years old

1

and a Certified Public Accountant.  Plaintiff's position required a one-year probationary period, during which time plaintiff knew he could be terminated for substandard performance. (Pltf. Dep. at 114, 115.)  Plaintiff was terminated on April 9, 2009, after approximately one year of employment.

When plaintiff began his employment, his supervisors were Michelle Terry and Brian McHugh.  In June of 2008, plaintiff met with Terry and signed a Civilian Performance Plan, setting out the expectations of plaintiff for his job.  (*Id*. at 117-18.)  Plaintiff acknowledges that in July or August of 2008, Terry told him that he was not performing according to what was expected and that maybe he should "move on."  (*Id.*, at 125-26.)  Plaintiff contends he received no actual supervision from anyone in his position from April through August 2008; he received no formal performance feedback; and that Terry and McHugh were removed as supervisors in Departmental Reporting in August 2008.  Nonetheless, plaintiff acknowledges that Terry expressed dissatisfaction with his performance.

Plaintiff informed Terry's supervisor, Allen Siarkowski, (then "Director, Treasury Reporting"), that Terry expressed a lack of confidence in his work performance and of Terry's statement to him that maybe he should move on.  Plaintiff told Siarkowski that he believed Terry intended to eliminate him during his probationary period.  (Siarkowski Aff.) Siarkowski states that he "halted all talk of terminating [plaintiff]" at that time and decided to provide plaintiff with projects himself, seeking to evaluate plaintiff's work performance independently.  In July 2008, Siarkowski gave plaintiff a project to gather metrics for Treasury Reporting.

In or around August 2008, Kelly Gibson began supervising plaintiff as "acting"

Supervisory Accountant in charge of the Undistributed Analysis Branch.  Beginning in January 2009, Gibson oversaw plaintiff's work on a permanent basis when Gibson became the actual Branch Chief of the Undistributed Analysis Branch of Treasury Reporting. Siarkowski was Gibson's supervisor during the relevant time period.

DFAS submits evidence on summary judgment that both Siarkowski and Gibson perceived problems with plaintiff's performance.  Siarkowski states that he had the opportunity to personally observe plaintiff's work performance from August through October of 2008.  He states that "nearly three months after [he] had assigned [plaintiff the] task of putting together a metrics from Treasury Reporting, Mr, Weltman admitted he provided nothing on that task."  In addition, "Mr. Weltman's Weekly Activity Reports (WAR) indicated Mr. Weltman was not performing up to the standards of a GS-11 employee" and Gibson had reported to him that plaintiff's work on two major recurring monthly tasks, a UTP Report and 6A3 Metric Report, was poor.  (Siarkowski Dec., ¶ 7.)

Gibson likewise states that plaintiff "was not performing his work to the level of his performance standards" in September and October of 2008.  Gibson states that she believed part of the reason for plaintiff's substandard work might have been plaintiff's computer activity on non-work related websites and warned plaintiff about DFAS's acceptable policy on internet use.  Further, Gibson states plaintiff also had difficulties with Microsoft Office work products that were necessary for plaintiff's job, and she strongly recommended to plaintiff that he take 13 online courses in Access, Word, Excel, and Power Point.  In November, Gibson also counseled plaintiff regarding "his time and attendance," noticing that plaintiff was frequently away from his desk for extended periods of time.  (Gibson Dec.)

3

Defendants submit evidence that, due to plaintiff's perceived poor work performance, Siarkowski, with advice and assistance of a DFAS human resources specialist, issued plaintiff a "Letter of Warning" on December 3, 2008 with plaintiff's Quarterly Performance/Feedback. The letter "identified [plaintiff's] work deficiencies and instructed him on ways to improve." (Siarkowski Dec., ¶ 8.)  Specifically, the letter warned plaintiff that he may be removed from his federal employment if his work performance, attendance, and computer misuse did not improve.  The letter set forth a detailed outline of improvements needed.  It required plaintiff to show dramatic improvement in his work performance, comply with deadlines, and complete Microsoft Office training by February 27, 2009, or advise Siarkowski of why such training was not completed and stating when it would be completed.

Both Siarkowski and Gibson state that plaintiff's performance did not improve to the appropriate standards for a GS-11 Accountant even after plaintiff received the December 2008 warning letter.  Gibson states that although plaintiff corrected his absence beyond breaks during duty hours and reduced his non-work related computer use, his work did not improve.  (Gibson Dec., ¶ 11.)  Rather, plaintiff's poor work performance continued to be an issue up until the March 2009 timeframe.  Additionally, plaintiff failed to complete the Microsoft Office courses as the December 3, 2008 warning letter required of him, and plaintiff did not notify Siarkowski of why the training was not completed.

Siarkowski and Gibson informed the Director of Departmental Reporting, Melissa Sikora, about plaintiff's performance problems.  On or about April 8, 2009, Sikora terminated plaintiff during his probationary period for poor performance.

Plaintiff contacted the EEO office after he was terminated.

4

Plaintiff filed this lawsuit on June 14, 2011.  Count I alleges a cause of action under the Age Discrimination in Employment Act (ADEA).  Plaintiff alleges that:  "Defendants, by and through their agents and employees, discriminated against Plaintiff by engaging in acts and omissions designed to belittle and demean Plaintiff because of his age, including denying him a transfer from his department to another department with the Agency and ultimately terminating his employment" and replacing him with an employee or employees who were substantially younger than him.  (Complt., ¶ 12.)  There was testimony in the case that plaintiff asked for but was denied a transfer to another department where his wife worked in late 2008.

Count II alleges a cause of action for religious discrimination under Title VII of the Civil Rights Act of 1964.  In this count, plaintiff alleges that:

> 17.  During Plaintiff's employment, Plaintiff was subjected to a hostile work environment, including ridicule and harassment because he did not celebrate Christmas or other Christian holidays.

> 18.  During Plaintiff's employment, he made repeated verbal complaints to his direct supervisor, Kelly Gibson, regarding her demand that he, as a Jewish DFAS employee, must hang a Christmas stocking, Christmas ornaments, a candy cane and a Christmas blanket in his cubicle.  Shortly after making these complaints, Plaintiff was given several disciplinary warnings and terminated soon thereafter.

(Complt., ¶¶ 17, 18.)  As set out in the discussion below, plaintiff testified that Gibson required him and other employees in her area to participate in holiday celebrations and that he objected to doing so.

Count III alleges a claim of retaliation under Title VII.  This count alleges that "[d]uring the course of [plaintiff's] employment, [he] engaged in activity protected by law, including but not limited to: (a) opposing acts which he reasonably believed were

5

discriminatory and (b) exercising his rights under the law to work in a workplace free of

religious discrimination."   Plaintiff alleges that defendants retaliated against plaintiff by:  (a)

subjecting him to "verbal, mental, emotional and physical harassment and abuse; (b) treating

him less favorably with regard to the terms and conditions of his employment than employees

who did not engage in protected activity; (c) subjecting him to heightened standards of

performance and increased scrutiny as compared to employees who did not engage in

protected activity; and (d) subjecting him to unwanted discipline or disproportionately harsh

discipline as compared to employees who did not engage in protected activity."  (Complt., ¶¶

22, 24.)

**Standard of Review**

Federal Rule of Civil Procedure 56 governs summary judgment and provides that

"[t]he court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled judgment as a matter of law."  The

procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is

genuinely disputed must support the assertion."  This can be done by citation to "materials in

the record," including depositions, documents, affidavits, stipulations, and electronically

stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[]

that the materials cited do not establish the absence or presence of a genuine dispute, or that

an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no

genuine issues of material fact in dispute, the burden shifts to the non-moving party to present

specific facts demonstrating that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).  In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.  *Id.* at 255.

**Discussion**

*Retaliation*

Defendants first move for summary judgment on plaintiff's retaliation claim in Count III.  Defendants contend plaintiff's retaliation claim fails as a matter of law because plaintiff cannot make out three of the four required elements of a *prima face* case.  Defendants further argue that, even if plaintiff's *prima facie* case is sufficient, it had legitimate, nondiscriminatory reason for terminating plaintiff – his poor performance.

The *prima facie* elements of a claim of retaliation under Title VII are:  (1) that plaintiff engaged in activity protected by Title VII; (2) plaintiff's exercise of rights was known to the defendant; (3) the defendant thereafter took an adverse employment action against plaintiff or plaintiff was subjected to severe and pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.  *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).[1]

---

[1]

In retaliation cases, as with other discrimination claims, once a plaintiff

Defendants assert that the plaintiff cannot prove the first element of a *prima facie* case that he engaged in "protected activity" because plaintiff admits that he engaged in "no previous EEO protected activity" prior to his making his EEO complaint after his termination in April 2009.  (Pltf. Dep., Ex. A-1, at 177-78.)  Defendants argue the second element of a *prima facie* case is lacking because there is no evidence that Melissa Sikora, the ultimate decisionmaker with respect to plaintiff's termination, had knowledge of plaintiff's complaints about Gibson.  For this same reason, defendants contend the *prima facie* element of causation is lacking.

Plaintiff contends that there is at least a genuine issue of material fact as to whether he engaged in protected activity because "his consistent testimony throughout this litigation" has been that he made verbal complaints to his supervisor, Kelly Gibson, regarding her "demands that he hang a Christmas stocking, Christmas ornaments, a candy cane and a Christmas blanket in his cubicle."  (Pltf. Opp. at 6.)  Although plaintiff does not set out the specific complaints he made in his opposition brief, he cites to pages 32-37 and 148-50 of his deposition in the EEO proceeding.  There, plaintiff testified that Gibson generally required employees in her area to display holiday decorations to celebrate various holidays.  In the beginning of October, Gibson set out a memo that she wanted people in her area to decorate with pumpkins.  In December, plaintiff found a Christmas stocking with his name on it displayed in his cubicle.  When he took the stocking down and told Gibson that he did not want to display it because he was Jewish and didn't celebrate Christmas, Gibson "ordered"

---

establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for an employment action.  Plaintiff must then demonstrate that the proffered reason was a pretext for discrimination.

him to display it.  He testified that later, despite Gibson's knowledge of his feelings about Christmas and Christmas decorations, he also found a candy cane and other decorations in his work area, including a Christmas blanket Gibson gave to  employees.  Plaintiff gave these items to other employees.  Plaintiff was later invited to a Christmas potluck dinner among his co-workers but declined to attend.  In January, after Christmas was over, he told Gibson privately that he did not want to be included in religious holidays because he was Jewish.  He testified that she then asked him whether he felt badly that "he didn't get to celebrate Christmas and Easter and those holidays" and he said no, not really.  (Pltf. Dep. at 35.) Plaintiff did not pursue the matter any further.  Plaintiff testified that in February, 2009, Gibson put out a memo asking employees to donate money for a "love-in" to celebrate Valentine's day.  *Id.*

The Court finds plaintiff's evidence insufficient to establish that plaintiff engaged in "protected activity" within the meaning of Title VII.  While a plaintiff need not file a formal charge of discrimination with the EEOC in order to engage in statutorily protected activity for purposes of Title VII,[2] an employee may not invoke the protections of the statute merely "by making a vague charge of discrimination."  *Fox v. Eagle Distributing Co., Inc*., 510 F.3d 587, 591 (6th Cir. 2007).  Rather, the employee must specifically make a complaint of an "unlawful" employment practice.  (*Id.*)  Plaintiff's testimony shows that plaintiff complained

---

[2]

An employee may also engage in protected activity by "opposing" any employment practice made unlawful under Title VII.  However "federal courts have generally granted less protection" when an employee "opposes" allegedly unlawful employment practices than when the employee actually participates in "enforcement proceedings."  *Nolan v. Indus. Sorting Servs., Inc.*, No. 3:10CV142, 2012 WL 1830473, at * 11 (E.D. Tenn. May 18, 2012).

about, and asked to be excluded from, Gibson's alleged requirement that employees participate in various holiday celebrations because he was Jewish, but plaintiff's complaints to Gibson do not demonstrate that plaintiff contended Gibson's employment practice as to holiday celebrations was "an unlawful employment practice."  Plaintiff testified that Gibson required employees to participate in all kinds of holiday celebrations, including non-secular holidays, and that he opposed Gibson's requirements generally.  He never told Gibson or any of Gibson's supervisors that he thought Gibson's practice was unlawful or violated his rights under Title VII.  Indeed, Gibson testified that he was not angry or offended by Gibson's conduct, and he took his complaints no further that his telling Gibson in January 2009 that he did not want to participate in holiday celebrations.

The evidence is insufficient to that plaintiff made a specific complaint of an unlawful employment practice under Title VII.  Plaintiff's complaints are, at best, a vague charge of discrimination.  Therefore, the first element of a *prima facie* case is lacking.

Further, plaintiff does not point to any evidence in his opposition brief demonstrating that Sikora knew of plaintiff's complaints about Gibson's requirements regarding holidays or plaintiff's expressed objection to such requirements.  Without citing to any authority whatsoever, plaintiff merely argues in his opposition brief that "Defendants cannot make any reasonable argument that they were not aware of the protected activity" because "Kelly Gibson was Mr. Weltman's direct supervisor, and was inextricably involved in the disciplinary action taken against Plaintiff."  (Pltf. Opp. at 5-6.)  Plaintiff's argument is insufficient to satisfy plaintiff's burden of coming forward with evidence on summary judgment demonstrating that a genuine issue of material fact exists as to the second element

10

of a *prima facie* case.  "The decisionmaker's knowledge of the protected activity is an essential element of the prima facie case of unlawful retaliation." *Frazier v. USF Holland, Inc.*, 250 F. Appx. 142, 148 (6th Cir. 2007).  Plaintiff has failed to point to specific evidence in the record to demonstrate that a material issue of fact exists on this point.

For the reasons discussed, plaintiff has failed to demonstrate evidence on summary judgment sufficient to establish the required elements for a *prima facie* case of retaliation. Defendants' motion for summary judgment is therefore granted as to Count III.

*Age and Religious Discrimination*

Defendants next move for summary judgment on plaintiff's age and religious discrimination claims under the ADEA and Title VII alleged in Counts I and II.  The standards for discrimination claims under the ADEA and Title VII are well-known.  In order to make out a claim of discrimination under those statutes, a plaintiff must first establish a *prima facie* case.  To establish a *prima facie* case in the absence of direct evidence of discrimination, a plaintiff must show that:  (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a person outside of the protected class or was treated differently than similarly situated employees.  *See. e.g., Burdette v. Federal Express Corp.*, 367 Fed. Appx. 628, 632 (6th Cir. 2010) (religious discrimination); *Zivkovic v. Juniper Networks, Inc.*, 450 F. Supp.2d 815, 823 (N.D. Ohio 2006) (age discrimination).  If a *prima facie* case is established, the burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action.  If the defendant states such a reason, "the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's

11

proffered reason was a pretext for [illegal] discrimination." *Burzynski v. Cohen*, 264 F.3d 611, 621-622 (6th Cir.2001).  In order to demonstrate pretext, "plaintiff must produce sufficient evidence from which the jury could 'reasonably reject the defendant's explanation' and infer that [defendant] 'intentionally discriminated' against him." *Leonard v. Twin Towers*, 6 Fed. Appx. 223, 228 (6th Cir. 2001).  Pretext may be proven by evidence "(1) that defendant's proffered reasons have no basis in fact, (2) that the proffered reasons did not actually motivate the discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (*overruled on other grds*, *Geiger v. Tower Auto.*, 379 F.3d 614 (6th Cir. 2009)).

Defendants argue that plaintiff cannot make out a *prima facie* case of either age or religious discrimination because "[p]laintiff cannot produce evidence to create a genuine issue of material fact on the second and fourth prongs of the prima facie case."  Specifically, defendants argue that plaintiff cannot establish the second prong of a *prima facie* case because plaintiff alleges two discrete acts of age discrimination in count one, DFAS's decision not to transfer him to another department and DFAS's decision to terminate his employment; however, courts have held that "a lateral transfer is not a materially adverse employment action."  (Def. Mem. at 15.)  Defendants argue that plaintiff cannot establish the fourth prong of a *prima facie* case because plaintiff was not replaced by an employee outside of his protected group and cannot identify any similarly situated employee outside of his protected group who was treated more favorably than he was.

In his opposition brief, plaintiff asserts that he has made out the *prima facie* elements for his age and religious discrimination claims.  (Pltf. Opp. at 8-9.)  He asserts that he "has

12

unquestionably satisfied the prima facie test on each of his discrimination claims" because "there is no dispute that he is over the age of 40 and Jewish, was terminated from his position with DFAS and was qualified for the position he held."  In addition, he asserts that he "was replaced by an individual under the age of 40, and because similarly situated non-Jewish employees were treated more favorably than Plaintiff."  (Pltf. Opp. at 9.)  In support of his position, plaintiff refers to an email he received during this litigation which indicates that DFAS hired a younger (and presumably non-Jewish) employee, Christy Johnson, to replace him after he was terminated.  To support his position that similarly situated non-Jewish employees were treated more favorably, he cites to his own testimony and testimony of Gibson that other non-Jewish employees used DFAS's computers for personal use at work. (Pltf. Opp. at 9).

The Court finds the requirements of a *prima facie* case of age and religious discrimination sufficiently made out for purposes of summary judgment.  Although defendants' argument is persuasive that plaintiff has not demonstrated that he was treated differently than "similarly situated" non-Jewish employees,[3] and further, plaintiff does not dispute defendants' assertion that the denial of a request for a lateral transfer does not constitute a materially adverse employment action for purposes of asserting a discrimination claim, plaintiff's age and religious discrimination claims are based at least in part on

---

[3]

The Sixth Circuit has held that in order to demonstrate that comparable employees are "similarly situated," the plaintiff must show that the employees are similarly situated "in all respects."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).  Plaintiff's evidence that non-Jewish employees were not disciplined as he was for using DFAS computers for personal use is not sufficient because the evidence does not show that the non-Jewish employees were similarly situated to plaintiff in "all" relevant respects, including in respect to their work performance.

13

plaintiff's allegations that defendants terminated him because of his age and religion.  In order to make out a *prima facie* case that he was terminated because of his age and religion, the plaintiff is required to show that he is a member of a protected class, qualified for the job, that defendants terminated him, and that he was replaced by an employee outside of the protected class.  (*See* Def. Mem. at 12.)  These elements exist here because it is undisputed that plaintiff was subjected to the adverse employment action of termination and DFAS informed plaintiff that it hired Christy Johnson, a non-Jewish employee under the age of 40, to replace him.

However, defendants argue that even if a *prima facie* case of age and race discrimination exists, they had legitimate, non-discriminatory reasons for any adverse employment actions taken against plaintiff, and plaintiff cannot show that these asserted legitimate, non-discriminatory reasons are pretextual.  Defendants acknowledge that plaintiff asked for a transfer to another department in the December 2008 timeframe.  Defendants submit the sworn statement of Louis Ockunzzi, then Director of Accounting Operations at DFAS Cleveland, who states that plaintiff's request for a lateral transfer was denied because: (1) DFAS had very few openings in the A/P division for accountants; (2) plaintiff's wife was already employed in the area to which plaintiff requested a transfer and Ocknuzzi attempted to ensure that spouses are not in the same division; (3) plaintiff had already been given a letter of warning in another division and therefore moving him to another division did not make logical sense; and (4) DFAS needed accountants in the area in which plaintiff was assigned. (Def. Ex. B-10, Statement of Louis Ockunzzi.)

In addition, defendants assert and point to evidence in the record indicating that plaintiff's employment was terminated in April 2009 because of plaintiff's documented "poor

performance" and conduct.  Defendants assert:

> Plaintiff's substandard performance and conduct . . . are detailed . . . and are a
> well-documented factual bas[i]s for his termination.  Plaintiff has admitted he
> thought his first supervisor would terminate him in July 2008.  Exs. A-4, A,
> pp. 122:3-124:8, 126:9-130:14.  Thereafter, he failed to perform assigned
> projects.  See, e.g., Exs. A-5, B-7.  He received a December 3, 2008 Letter of
> Warning confirming "your performance and conduct indicate you are not
> suitable for federal employment."  Ex. B-7.  He failed to comply with his
> Letter of Warning.  Exs. A, pp. 172:9-173:18; A-1, p. 54:3-4; B-11.  He failed
> to perform his primary reporting functions to a satisfactory level.  See, e.g.
> Section II, supra.  He received substandard Quarterly Performance reviews.
> Exs. B-3' B-11.  Plaintiff cannot provide any evidence demonstrating that the
> reasons for his termination were pretextual, other than his own subjective
> perception.  Tellingly, Plaintiff's first alleged acts of discrimination – refusal
> to transfer and holiday decoration comments– occurred well after he thought
> his first supervisor would terminate him for poor performance, after his
> substandard Quarterly Performance review, and after the December 3, 2008
> Letter of Warning that concluded without dramatic and significant
> improvements in his conduct and performance, Plaintiff may be terminated.
> Ex. A, pp. 166:22-167:3.  Even more dispositive, Plaintiff did not allege any
> form of discrimination or retaliation until after he was terminated.

(Def. Mem. at 17-18.)

Plaintiff contends in his opposition brief that issues of fact exist as to whether

plaintiff's age and religion were the "motivating factors for his termination."  But the

following is the sum total of plaintiff's argument responding to defendants' argument and

evidence that defendants terminated plaintiff for his poor work performance and failure to

comply with his December 2008 warning letter:

> While DFAS claims that Plaintiff was terminated for legitimate,
> nondiscriminatory reasons, genuine issues of material fact have been identified
> concerning the disparate treatment received by Plaintiff.  These factual issues
> must be resolved at a hearing and not on summary judgment.  For instance,
> during discovery in Administrative EEOC Case 532-2010-00010x, DFAS
> provided a list of 77 probationary employees hired in the preceding two years.
> . . . Plaintiff was one of the three oldest of the employees hired during that
> period of time.

(Pltf. Opp. at 10.)

Plaintiff also argues in his opposition brief that defendants' real motivation was to "paper" his file with disciplinary write-ups and emails so that they could terminate him before the end of his probationary period so that he would not be entitled to a hearing.  (*Id*. at 10-11.)

Defendants have satisfied their burden of demonstrating that the adverse employment action taken against plaintiff (*i.e.*, plaintiff's termination) was taken against plaintiff for legitimate, non-discriminatory reasons –  plaintiff's poor performance and his failure to comply with defendants' stated expectations and  December 3, 2008 "Letter of Warning." Plaintiff has not met his burden on summary judgment of coming forward with evidence demonstrating that defendants' asserted legitimate reasons are a pretext for illegal discrimination.  Plaintiff does not point to any evidence contrary to defendants' evidence suggesting that he was successfully performing the functions of his job (indeed, plaintiff does not even argue that his performance complied with applicable standards of GS-11 Accountant).  Nor does plaintiff deny, or point to evidence refuting, defendants' assertions that he engaged in conduct for which he was disciplined.

Plaintiff first asserts that he was one of the oldest probationary employees hired by defendants in the prior two year period, but this fact is not sufficient to show that defendants' asserted reasons for terminating plaintiff during his probationary period are pretextual. Second, plaintiff asserts that "genuine issues of material fact have been identified concerning the disparate treatment received by Plaintiff."  However, plaintiff's evidence is not sufficient to demonstrate that he was treated less favorably than any other "similarly situated" employee.  As noted in footnote 3 above, the Sixth Circuit has held that in order to make such

16

a showing, the plaintiff must show that other employees, who were treated differently than plaintiff, were similarly situated to plaintiff "*in all respects*."  Mitchell, 964 F.2d at 583 (emphasis added.) Plaintiff has not come forward with evidence indicating that any employee similarly situated to him in terms of conduct and work performance was treated more favorably.  Further, plaintiff has not disputed that his performance was poor and that he failed to comply with the December 3, 2008 Warning Letter.

Plaintiff's own asserted belief that defendants set out to terminate him before his probationary period ended also does not show pretext.  Plaintiff's own belief as to defendants' motivation does not demonstrate that defendants' asserted legitimate reason had no basis in fact, was insufficient to motivate his discharge, or did not actually motivate his discharge.

Finally, plaintiff's arguments in connection with his retaliation claim – that he was subjected to discipline and ultimately terminated because he complained to Gibson about not wanting to participate in Christmas holiday celebrations – are unpersuasive to show pretext. The evidence shows that plaintiff's supervisors found plaintiff's work performance insufficient prior to any of the complaints plaintiff alleges he made to Gibson about Christmas decorations and holiday celebrations.

In sum, plaintiff has failed to satisfy his burden on summary judgment of coming forward with probative evidence of pretext.  Plaintiff has failed to point to evidence demonstrating that defendants' proffered reasons for terminating him had no basis in fact, did not actually motivate his discharge, or were insufficient to motivate his discharge. *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d at 1084.  Accordingly, defendants' motion for summary judgment on plaintiff's age and religious discrimination claims alleged in

17

Counts I and II is granted.[4]

### Conclusion

For all of the reasons stated above, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.


/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/16/12

---

[4]

      Defendants also argue that plaintiff did not timely exhaust administrative remedies with regard to the various "incidents" of discrimination plaintiff alleges in counts one and two because plaintiff did not bring these allegedly discriminatory acts to the attention of an EEO counselor within 45 days after they occurred.  Although plaintiff does not make any effort to refute defendants' exhaustion argument, it is not necessary for the Court to reach it because the Court finds plaintiff's age and religious discrimination claims insufficient for the reasons discussed above.